Fill in this information to identify your case:

Debtor 1        Paul Lovett
                First Name        Middle Name        Last Name

Debtor 2        Angela Lovett
(Spouse, if filing)  First Name   Middle Name        Last Name

United States Bankruptcy Court for the:  Middle District of Tennessee

Case number     16-06780
(If known)

**Official Form 427**

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1:    Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**

InSolve Auto Funding, LLC
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed   $   7,673.25

To be paid under the reaffirmation agreement   $   7,673.25

$ 300.00 per month for 34 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed        22.00 %

Under the reaffirmation agreement           22.00 %   ☑ Fixed rate
                                                       ☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☑ Yes.  Describe the collateral.   2015 HYUNDAI ACCENT HATCHBK, VIN KMHCT5AE4FU213462

Current market value   $   8,775.00

**5. Does the creditor assert that the debt is nondischargeable?**

☐ No                     *Post Petition Purchase
☑ Yes.  Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J

6a. Combined monthly income from line 12 of Schedule I   $ 4,697.40

6b. Monthly expenses from line 22c of Schedule J   – $ 4,695.00

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   – $ 0

6d. **Scheduled net monthly income**   $ 2.04

Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources after payroll deductions   $ 4,697.40

6f. Monthly expenses   – $ 4,695.00

6g. Monthly payments on all reaffirmed debts not included in monthly expenses   – $ 0

6h. **Present net monthly income**   $ 2.04

Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

| 7. | Are the income amounts on lines 6a and 6e different? | ☒ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ |
|---|---|---|

| 8. | Are the expense amounts on lines 6b and 6f different? | ☒ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ |
|---|---|---|

| 9. | Is the net monthly income in line 6h less than 0? | ☒ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>_____<br>_____<br>_____ |
|---|---|---|

| 10. | **Debtor's certification about lines 7-9**<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are *No*, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _____   ✗ _____<br>Signature of Debtor 1          Signature of Debtor 2 (Spouse Only in a Joint Case) |
|---|---|---|

| 11. | Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>  ☐ No<br>  ☒ Yes |
|---|---|---|

---

### Part 2:   Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

✗ _~Adam Jones (signature)~_____     Date __04/10/2019__
Signature                                                   MM / DD / YYYY

___Adam Jones___
Printed Name

Check one:

☐ Debtor or Debtor's Attorney

☒ Creditor or Creditor's Attorney

---

Check one.
☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation,*
*Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

## Middle District of Tennessee

Paul Lovett & Angela Lovett
In re _____,          Case No. 16-06780 _____
                    *Debtor*
                                                   Chapter  7 _____

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** InSolve Auto Funding, LLC _____

☐ Check this box if Creditor is a Credit Union

## PART I.  REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision.  Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A.  Brief description of the original agreement being reaffirmed: Promissory Note & Security Agreement _____

*For example, auto loan*

B.  ***AMOUNT REAFFIRMED***:          $ _____ 7,673.25

      The Amount Reaffirmed is the entire amount that you are agreeing to pay.  This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

      *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C.  The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is   22.0000 %.

      *See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐     $_____ per month for _____ months starting on_____.

☑     Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$300.00/mo. until paid in full. Except as modified below, the terms of the attached Promissory Note and Security Agreement are hereby incorporated by reference. This reaffirmation agreement is void if the underlying security agreement is determined to be unenforceable or invalid by the Bankruptcy or other Court of competent jurisdiction.

E. Describe the collateral, if any, securing the debt:

Description:        2015 HYUNDAI ACCENT...213462
Current Market Value    $               8,775.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?     $          10,862.00

☐ No. What was the amount of the original loan?     $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $     7,673.25 | $     7,673.25 |
| Annual Percentage Rate | 22.0000 % | 22.0000 % |
| Monthly Payment | $    300.00 | $    300.00 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.     DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.    ☑ Yes     ☐ No

B. Is the creditor a credit union?

Check one.    ☐ Yes     ☑ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

    1.    Your present monthly income and expenses are:

        a. Monthly income from all sources after payroll deductions
(take-home pay plus any other income)                  $ 4,697.40

        b. Monthly expenses (including all reaffirmed debts except
this one)                       $ 4,395.00

        c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ 302.40

        d. Amount of monthly payment required for this reaffirmed debt  $ 300.00

        *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

    2.    You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

        Check one of the two statements below, if applicable:

        [×]    You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

        [ ]    You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

        Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

        [ ]    You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

    (1)    I agree to reaffirm the debt described above.

    (2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    (3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    (4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

    (5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4/5/19    Signature _____
                                      *Debtor*

Date 4/5/19    Signature _Angela Lovett_____
                                  *Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor:

Creditor _InSolve Auto Funding c/o Wayfinder BK_    _P.O. Box 64090 Tucson, AZ 85728-4090_
              *Print Name*                           *Address*

~~Nicklas P. Opellas~~ Adam Jones    _____    04/10/2019
    *Print Name of Representative*              *Signature*          *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

    *To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 4/5/19    Signature of Debtor's Attorney _____

              Print Name of Debtor's Attorney  John T. Maher

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.     DISCLOSURE STATEMENT

1.     **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay.  Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.     **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.     **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral.  Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt.  If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.     **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.  However, the court may extend the time for filing, even after the 60-day period has ended.

5.     **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later.  To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled).  Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   > i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   > ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| KMHCT5AE4**FU213462** | 2015 | HYUN | ACC | 4H | **99852640** |

DATE OF FIRST SECURITY INTEREST 12-23-2016

FIRST LIENHOLDER CODE

INLAND BANK AND TRUST ISAOA
2805 BUTTERFIELD RD ST200
OAK BROOK    IL 60523

FIRST LIEN RELEASED BY

_____

SIGNATURE                    RELEASE DATE

INLAND BANK AND TRUST ISAOA
2805 BUTTERFIELD RD ST200
OAK BROOK    IL 60523

FU21346299852640

STATE OF TENNESSEE
DEPARTMENT OF REVENUE

---

## STATE OF TENNESSEE

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE DOCUMENT. BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

### CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| **KMHCT5AE4FU213462** | 2015 | **HYUN** | ACC | 4H | 99852640 |

| NEW | USED | DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|---|---|
| | X | | 118066094 | FL | $777.19 | 63 | 44295 |

DATE TITLE ISSUED          01-26-2017      REMARKS
DATE VEHICLE ACQUIRED      12-23-2016      ACTUAL MILEAGE

**PAUL D LOVETT      AND
ANGELA T LOVETT
323 MILLS DR
CLARKSVILLE      TN 37042**

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN
SUBMITTED UNDER TENNESSEE CODE ANNOTATED,
55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED
ABOVE IS VESTED IN THE OWNER'S NAME HEREIN.
THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED
FOR SAID MOTOR VEHICLE.

FIRST LIEN RELEASED BY

_____

SIGNATURE                    RELEASE DATE

DATE OF FIRST SECURITY INTEREST  12-23-2016

FIRST LIENHOLDER CODE

**INLAND BANK AND TRUST ISAOA
2805 BUTTERFIELD RD ST200
OAK BROOK IL  60523**

KMHCT5AE4FU213462                                     99852640

25841694          2 5 8 4 1 6 9 4

RV-F1318101 REV 12/14





# NOTE, DISCLOSURE AND SECURITY AGREEMENT

**Borrower:** Paul Lovett
Angela Lovett
323 Mills Drive
Clarksville, TN 37042

**Lender:** Inland Bank and Trust
2805 Butterfield Road, Suite 200
Oak Brook, IL 60523

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. |
| **22.000%** | **$7,138.29** | **$10,862.00** | **$18,000.29** |

**PAYMENT SCHEDULE.** My payment schedule will be 59 monthly payments of $300.00 each, beginning January 21, 2017; and one payment of $300.29 on December 21, 2021.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in the goods or property being purchased.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.**

**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

## Amount Financed Itemization

| | | |
|---|---|---|
| Other Disbursements:<br>$10,862.00 a check payable to The Hertz Corporation | $10,862.00 | |
| Note Principal: | $10,862.00 | |
| Prepaid Finance Charges: | $0.00 | |
| Amount Financed: | $10,862.00 | |

**Principal Amount: $10,862.00**     **Interest Rate: 22.000%**     **Date of Agreement: December 21, 2016**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Inland Bank and Trust ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ten Thousand Eight Hundred Sixty-two & 00/100 Dollars ($10,862.00), together with interest on the unpaid principal balance from December 21, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 22.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 59 payments of $300.00 each payment and an irregular last payment estimated at $300.29. My first payment is due January 21, 2017, and all subsequent payments are due on the same day of each month after that. My final payment will be due on December 21, 2021, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Agreement is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Inland Bank and Trust, 2805 Butterfield Road, Suite 200, Oak Brook, IL 60523.**

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Agreement will continue to accrue interest at the interest rate under this Agreement.

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under this Agreement:

    **2015 Hyundai Accent Hatchback (VIN KMHCT5AE4FU213462)**

In addition, the word "Property" also includes all the following:

    (A) All accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or

batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later.

(B) All products and produce of any of the property described in this Property section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Property section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Property section, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Property section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of my right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Property unless and until such a notice is given.

**GRANT OF SECURITY INTEREST.  To secure payment of the Indebtedness and performance of my obligations under this Agreement, I grant to Lender a security interest in all the Property described above.  I understand that the following statements set forth my responsibilities, as well as Lender's rights, concerning the Property.  I agree as follows:**

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.**  I represent and promise to Lender that:

**Ownership.**  I am the lawful owner of the Property.  The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement.  I agree to defend Lender's rights in the Property against the claims and demands of all persons.  I will not allow any other liens on the Property, even if they are junior to Lender's lien.

**No Sale.**  Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

**Location of the Property.**  Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it.  If the Property is a vehicle, I will keep the Property at those addresses except for routine travel.  I will not do anything that requires applying for a certificate of title for the vehicle in another state.  If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving.  In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.**  I will keep the Property in good condition and repair.  If the Property is damaged, lost or stolen, I immediately will inform Lender.  I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time to protect Lender's interest in the Property.  The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice.  I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender.  I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid.

**Inspection.**  I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.**  I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  I irrevocably appoint Lender as my attorney-in-fact to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.  I will promptly notify Lender of any change to my name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement.  I will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for me or any individual for whom I am required to provide notice regarding name changes.

**LENDER'S EXPENDITURES.**  If I fail  (A)  to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims,  (B)  to provide evidence of any required insurance on the Property, or  (C)  to make repairs to the Property then Lender may do so.  If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under this Agreement from the date incurred or paid by Lender to the date of repayment by me.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of this Agreement and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of this Agreement.  The Agreement also will secure payment of these amounts.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default.  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.**  I will be in default if any of the following happens:

**Payment Default.**  I fail to make any payment when due under this Agreement.

**Break Other Promises.**  I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement, or in any other agreement or loan I have with Lender.

**False Statements.**  Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.**  I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.**  Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender

has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Agreement is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Cure Provisions.** If any default, other than a default in payment, is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. **If I am in default, this is what Lender may do, in addition to any other rights Lender may have:**

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Tennessee. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Illinois.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**NOTARY.** An exhibit, titled "NOTARY," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**SUCCESSOR INTERESTS.** The terms of this Agreement shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** I may notify Lender if Lender reports any inaccurate information about my account(s) to a consumer reporting agency. My written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Inland Bank and Trust Attn: Loan Operations Dept. 2805 Butterfield Road, Suite 200 Oak Brook, IL 60523.

**GENERAL PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**ILLINOIS INSURANCE NOTICE. Unless I provide Lender with evidence of the insurance coverage required by my agreement with Lender, Lender may purchase insurance at my expense to protect Lender's interests in the collateral. This insurance may, but need not, protect my interests. The coverage that Lender purchases may not pay any claim that I make or any claim that is made against me in connection with the collateral. I**

may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that I have obtained insurance as required by our agreement. If Lender purchases insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Note, Disclosure and Security Agreement, as this Note, Disclosure and Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Note, Disclosure and Security Agreement from time to time.

**Borrower.** The word "Borrower" means Paul Lovett and Angela Lovett, and all other persons and entities signing the Note.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Inland Bank and Trust, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE, DISCLOSURE AND SECURITY AGREEMENT.**

**BORROWER:**

X _____
Paul Lovett

X _____
Angela Lovett

**LENDER:**

**INLAND BANK AND TRUST**

X _____
Authorized Signer

LaserPro, Ver. 18.4.0.017 Copr. D+H USA Corporation 1997, 2018 All Rights Reserved. - IL L:\LABS\RPROX\CFILPL\D20.FC TR-6708 PR-115

# NOTARY

**Borrower:**  Paul Lovett
Angela Lovett
323 Mills Drive
Clarksville, TN 37042

**Lender:**  Inland Bank and Trust
2805 Butterfield Road, Suite 200
Oak Brook, IL 60523

This NOTARY is attached to and by this reference is made a part of the Note, Disclosure and Security Agreement, dated December 21, 2016, and executed in connection with a loan or other financial accommodations between INLAND BANK AND TRUST and Paul Lovett and Angela Lovett.

STATE OF _Tennessee_    )

                        ) SS

COUNTY OF _Davidson_    )

Subscribed and sworn to before me this ___22___ day of _December_, 20 _16_.

Notary Public for the State of _Tennessee_

Residing at _1169 W Main St._

My commission expires _3.17.20_

THIS NOTARY IS EXECUTED ON DECEMBER 21, 2016.

**BORROWER:**

X _____
Paul Lovett

X _____
Angela Lovett

**LENDER:**

**INLAND BANK AND TRUST**

X _____
Authorized Signer

LaserPro, Ver 18 4 0 017  Copr. D+H USA Corporation 1997, 2018  All Rights Reserved.  - IL  L:\LASERPRO\CFI\LPL\D20.FC  TX-6708  PR-113



## RIDER TO LOAN DOCUMENTS

**THIS RIDER TO LOAN DOCUMENTS** ("Rider") is dated as of December 21, 2016 is made by and between Paul Lovett and Angela Lovett, (the "Borrowers") and **INLAND BANK AND TRUST**, an Illinois state chartered banking institution (the "Lender"), with respect to that certain credit facility made available from Lender to Borrowers in the principal amount of $ 10,862.00(the "Loan").

WHEREAS, Borrowers has executed and delivered to Lender that certain Note, Disclosure and Security Agreement of even date herewith (the "Agreement") in the amount of the Loan. The Agreement and all other documents executed or delivered by Borrowers evidencing the Loan, as may be amended, restated, modified, substituted or replaced from time to time, are hereinafter referred to collectively as the "Loan Documents".

NOW THEREFORE, the undersigned hereby agree that this Rider is executed contemporaneously with and shall be deemed to be a part of and included in the Loan Documents, and in the event of any inconsistency between the other Loan Documents and this Rider, this Rider shall control, and as follows:

### 1. AGREEMENTS.

1.1 RECITALS. The foregoing Recitals are hereby made a part of this Rider.

1.2 DEFINITIONS. Capitalized words and phrases used herein without definition shall have the respective meanings ascribed to such words and phrases in the Loan Documents.

### 2. AMENDMENTS TO THE AGREEMENT.

2.1 New Default. The following subsection is hereby added to the section of the Agreement titled "Default":

**Default in Favor of Third Parties.** At any time, after the date hereof, I or any grantor defaults under any loan extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of Lender or any other creditor or person that may materially affect any of my property or my ability to repay this Agreement or perform my obligations under this Agreement or any other document delivered to Lender in connection with this Agreement.

2.2 Amended Default. The subsection titled "Death or Insolvency" within the section of the Agreement titled "Default" is hereby deleted in its entirety and the following is substituted therefor:

**Death or Insolvency.** At any time, after the date hereof, any I die, become incompetent or become insolvent, I make an assignment for the

benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

2.3    Assignment by Lender.  The following is hereby added to the Agreement as a section titled "Assignment by Lender".

**Assignment by Lender.**  Lender may at any time assign Lender's rights in this Agreement, any documents delivered to Lender in connection with this Agreement, the obligations evidenced thereby, or any part thereof and transfer Lender's rights in any or all of the Property and Lender thereafter shall be relieved from all liability with respect to such Property. In addition, Lender may at any time sell one or more participations in the indebtedness evidenced by this Agreement.  Borrowers and any grantor may not sell or assign this Agreement, any documents delivered to Lender in connection with this Agreement, the obligations evidenced thereby or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender.  This Agreement shall be binding upon Lender and Borrowers and their respective legal representatives and successors.  All references herein to Borrowers shall be deemed to include any successors, whether immediate or remote.

2.4    Representations and Warranties. (a) The following subsection contained in the Section of the Agreement titled "Representations and Warranties with Respect to the Property" is hereby deleted in its entirety and the following is substituted therefor:

**Financing Statements**.  I authorize Lender to file a Uniform Commercial Code financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. The proceeds of this Agreement secured hereby are being used to acquire the Property, and I understand and agree that Lender is entitled to, and I hereby grant to Lender under this Agreement, a purchase money security interest in the Property, and Lender shall be entitled to all rights of a holder of a purchase money security interest under the Uniform Commercial Code and applicable law. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by applicable law or unless Lender is required by applicable law to pay such fees and costs. I irrevocable appoint Lender as my attorney-in-fact to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. I will promptly notify Lender of any change to my name or of any individual grantor, any individual who is a partner for a grantor, and any individual who is a trustee or settler or trustee for a grantor under this Agreement. I will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's

license or state-issued identification card for me or any individual for whom I am required to provide notice regarding name changes.

(b)    The following text is appended to the end of the subsection titled "Maintenance and Insurance" in the Section of the Agreement titled "Representations and Warranties with Respect to the Property":

"If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds."

(c)    The following subsections are hereby added to that Section of the Agreement titled "Representations and Warranties with Respect to the Property":

**Licensing and Governmental Regulations**.  I agree to keep the Property registered and licensed at all times as required by all applicable state and federal laws.    In additional, I agree to pay when due all registration and licensing fees, taxes and assessments relating to the Property or the use of the Property.  I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance or regulation relating to the use, operation or control of the Property.

**Motor Vehicle Records**.  Concurrent with the funding of the loan evidenced by this Agreement, Borrowers shall deliver or cause to be delivered to Lender the original certificate of title to the Property, other evidence of title as may exist or be required by Lender and any applications or other documentation signed by Borrowers, as Lender may require. Lender shall be entitled to make any and all filings it deems necessary with any governmental authority required to perfect its security interest in the Property, pursuant to the Uniform Commercial Code, motor vehicle code or any other laws of the State of Tennessee, including filing a lien against the certificate of title in the Property.

2.5    Lender's Rights.  The subsection titled "Other Rights and Remedies" in the Section of the Agreement titled "Lender's Rights" is hereby deleted in its entirety and the following is substituted therefor:

**Other Rights and Remedies**.  In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other

Case 3:16-bk-06780    Doc 120    Filed 04/11/19    Entered 04/11/19 11:08:53    Desc Main
Document      Page 18 of 21

applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me. In addition to the foregoing, Lender will also have the right to file any application for title to the Property to cause a transfer of title in the Property to Lender, and Lender may thereafter dispose of, sell or otherwise transfer the Property to any third party and apply the proceeds therefrom to Borrowers's obligations under this Agreement.

## 3.  MISCELLANEOUS.

3.1  <u>References to Loan Documents</u>. All references herein and in the Loan Documents to any other Loan Document, Loan Documents or "Related Documents" shall mean such Loan Document, Loan Documents "Related Document" or "Related Documents", as the case may be, as amended by this Rider.

3.2  <u>Omnibus Rider</u>. Each of the Loan Documents shall be deemed amended to give effect to the provisions of this Rider without need for referencing each of the Loan Documents by name. Without limiting the generality of the foregoing, Borrowers and Lender acknowledge that the terms "Loan Documents" and "Related Documents" shall mean all of the Loan Documents as modified by this Rider. Additionally, as used in the other Loan Documents, the term "Documents", "Loan Documents" and/or "Related Documents" shall now be deemed to include this Rider and any other documents, instruments or agreements executed in connection herewith.

3.3  <u>Continuing Force and Effect of Loan Documents</u>. Except as specifically modified or amended by the terms of this Rider, all other terms and provisions of the Loan Documents shall continue in full force and effect. Borrowers, by its execution of this Rider, hereby affirms, assumes and binds himself/herself to all of the obligations, duties, rights, covenants, terms and conditions that are contained in the Loan Documents to which he/she is a party.

[Signature page follows]

IN WITNESS WHEREOF, the undersigned have executed this Rider and hereby incorporate it into the Loan Documents.

**BORROWER:**
Paul Lovett

Print Name: POUl Lovett

**LENDER:**

**INLAND BANK AND TRUST,** an Illinois state chartered banking institution

By: _____
Name: _____
Its: _____

**BORROWER:**
Angela Lovett

Print Name: Angela Lovett

{00394495.DOC/v5/3037/000/3/17/2014 02:29 PM}

## EXHIBIT A

## BILL OF SALE

## AND WAIVER OF NOTICE OF TRANSFER OF CLAIMS

For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow In-Bankruptcy Auto Loan Purchase and Sale Agreement (the "Agreement"), dated as of the 1st day of February, 2014, by and between INLAND BANK AND TRUST ("Seller"), and INSOLVE AUTO FUNDING, LLC, a Delaware limited liability company("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse and to the extent of Seller's ownership, the Loans as set forth in the Notification File (as defined in the Agreement), it being understood that such transfer, sale, conveyance, grant and delivery is made without any representations or warranties except those expressly made in the Agreement.

Pursuant to the foregoing, Seller stipulates that Buyer may be substituted for Seller as the valid owner of the Loans and hereby waives any notice or hearing requirements imposed by, or right to object pursuant to, Bankruptcy Rule 3001(e)(2) or otherwise. Seller further consents to the attachment of a copy of this Bill of Sale to a Proof of Claim filed by Buyer pursuant to said rule.

INLAND BANK AND TRUST

By: _____

Print Name: _Howard A. Jaffe_

Title: _Chairman/CEO_